UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

THOMAS WILSON,

Petitioner,

v.

STATE OF MINNESOTA,

Respondents.

Civil File No. 00-1194 (JRT/JGL)

**REPORT AND RECOMMENDATION**

Thomas Wilson, Minnesota Correctional Facility -- Faribault, 1101 Linden Lane, Faribault, Minnesota, 55021-6400, Petitioner, pro se.

Darrell C. Hill, Assistant Ramsey County Attorney, Ramsey County Government Center-West, 50 West Kellogg Blvd., Suite 315, St. Paul, Minnesota, 55102, for Respondent.

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on the application of Petitioner, Thomas Wilson, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response to the petition, contending that Petitioner is not entitled to habeas corpus relief, and that this action should be dismissed. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, the Court recommends that Petitioner's application for habeas corpus relief be denied, and that this action be dismissed with prejudice.

## I. BACKGROUND

On November 11, 1995, a City of St. Paul police officer stopped a vehicle that Petitioner was driving. The officer stopped Petitioner because he had received a tip from

FILED FEB 12 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

a confidential informant indicating that Petitioner had been dealing crack cocaine. The officer asked Petitioner for permission to search his vehicle, and Petitioner let him. The officer found $2000 in cash, as well as two pagers and a cell phone that included data suggesting that Petitioner might be a drug dealer. A police dog also searched the car and gave a signal indicating the presence of narcotics. Petitioner was then taken to police headquarters, where he was subjected to a strip search. The police found 9.4 grams of crack cocaine hidden in Petitioner's underwear.

Thereafter, a police officer gave Petitioner a "Miranda warning," and asked him whether he would agree to give a tape-recorded interview. Petitioner indicated that he would not answer any questions on tape, so no interview was conducted at that time. The next morning, a different officer talked to Petitioner. That officer reminded Petitioner of the Miranda warning that he had been given the night before, but he did not expressly repeat the full warning. Petitioner then did talk to the second officer, and, unbeknownst to Petitioner, the interview was tape-recorded. During that second interview, Petitioner admitted that he had hidden the cocaine in his underwear, and that he had intended to sell it.

A few weeks later, the police obtained a warrant to search Petitioner's residence, based on an informant's tip indicating that he had been dealing drugs there. When the search warrant was executed on December 5, 1995, the police found several packages of cocaine, weighing more than 150 grams, hidden inside a child's toy.

Petitioner was later charged with two violations of Minnesota's controlled substance laws. He was charged with possession of cocaine with intent to sell (a second degree offense) in connection with the first incident -- i.e., when the 9.4 grams of crack were found

in his underwear; and he was charged with possession of cocaine, (a first degree offense), in connection with the second incident – i.e., when the 150 grams of cocaine was found at his residence.

Petitioner brought several pre-trial suppression motions challenging the admissibility of the evidence obtained from the search of his car, the search of his home, and his tape-recorded statements to the police. Those motions were denied, and Petitioner was then tried before a judge on the basis of a stipulated statement of facts. The trial court judge found Petitioner guilty of both charged offenses, and imposed two concurrent sentences -- 108 months for the offense involving the cocaine found on his person, and 158 months for the cocaine found in his home.

Following his conviction, Petitioner took a direct appeal to the Minnesota Court of Appeals, reasserting the arguments previously raised in his suppression motions. He also argued that there was insufficient evidence to support his second conviction, because the State had not proven that he possessed the cocaine found in his home. The Court of Appeals rejected all of Petitioner's arguments and affirmed his convictions. State v. Wilson, Nos. C8-97-1423, CX-97-1424 (Minn.App. 1998), 1998 WL 188554 (unpublished opinion). Petitioner claims that his attorney agreed to file a petition seeking further review in the Minnesota Supreme Court, but no such petition was ever filed.

More than a year after the State Court of Appeals affirmed his convictions, Petitioner filed a motion for post-conviction relief in the trial court. In that motion, he once again raised the arguments previously presented in his various suppression motions. He also claimed that the trial court judge had committed a sentencing error, and that he had received ineffective assistance of counsel at trial. All of those arguments were summarily

rejected, because they were, or could have been, raised on direct appeal. ("Respondent's Memorandum In Opposition To Petition For Writ Of Habeas Corpus," [Docket No. 17], Appendix C.)

Petitioner also argued in his post-conviction motion he had received ineffective assistance of counsel on appeal, because his attorney had not filed an application seeking further review in the Minnesota Supreme Court. The trial court judge rejected that argument, based on his finding that the attorney "was not retained to perform that service." ("Respondent's Memorandum," Appendix C, p. 2.)

Petitioner did not seek any further state appellate court review after the trial court denied his post-conviction motion. Instead, he filed his present application for federal habeas corpus review. Petitioner lists six grounds for relief in his current petition:

(1) that his constitutional rights were violated when the police stopped him on November 11, 1995, because they did so without probable cause;

(2) that his constitutional rights were violated when the police searched his vehicle on November 11, 1995, because they did so without a valid consent;

(3) that his constitutional rights were violated when he was taken into custody, and searched at the police station, on November 11, 1995;

(4) that his statements to the police on November 12, 1995, should not have been useable as evidence against him, because he had not been advised of his Miranda rights and his statements were involuntary;

(5) that his constitutional rights were violated when the police searched his home in December 1995, because the warrant for the search was invalid; and

(6) that there was insufficient evidence to support his conviction for the offense involving the cocaine found at his residence.

For the reasons discussed below, the Court finds that Petitioner's first, second, third and fifth grounds for relief, (the Fourth Amendment claims), are barred by Stone v. Powell, 428 U.S. 465 (1976). The Court further finds that Petitioner's fourth and sixth grounds for relief, (the Miranda claim and the insufficiency of the evidence claim), are without merit.[1]

## II. DISCUSSION

### A. Grounds One, Two, Three and Five Are Barred by Stone v. Powell

Petitioner's Fourth Amendment claims, (grounds one, two, three and five of his petition), must be summarily dismissed pursuant to the Supreme Court's decision in Stone v. Powell, supra. There, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. The holding of Stone v. Powell is clearly applicable here.

---

[1] Respondent contends that Petitioner's fourth and sixth claims are unexhausted, and have been procedurally defaulted pursuant to O'Sullivan v. Boerckel, 526 U.S. 838 (1999), because Plaintiff never presented them to the Minnesota Supreme Court. That argument will not be adopted here, because it is not altogether clear whether the State of Minnesota has "consistently asserted that the failure to seek a discretionary [review in the State Supreme Court] is a bar to federal habeas relief." Dixon v. Dormire, 263 F.3d 774, 781 (8th Cir. 2001). Petitioner's fourth and sixth grounds for relief can be, and will be, denied on the merits, without resolving the exhaustion/procedural default issue. See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

There can be no doubt that Petitioner was given a full and fair opportunity to raise his Fourth Amendment search-and-seizure claims in his state court proceedings. Indeed, Petitioner not only had an opportunity to raise his Fourth Amendment claims, he did in fact raise those claims in the state courts, and they were in fact fully litigated. The record shows that trial court conducted extensive hearings on all of Petitioner's arguments concerning the allegedly illegal stop of his vehicle, the allegedly illegal search of his vehicle, the allegedly illegal seizure and search of his person, and the allegedly illegal search of his residence. Furthermore, Petitioner had a second full and fair opportunity to raise his Fourth Amendment claims in his direct appeal to the Minnesota Court of Appeals, and he once again took full advantage of that opportunity. His search and seizure claims were fully raised, argued, and adjudicated in the Court of Appeals.

Thus, both the trial court and the Minnesota Court of Appeals afforded Petitioner an unrestricted opportunity to present his Fourth Amendment claims. Both of those courts fully considered Petitioner's claims, and both courts decided all of his search and seizure claims on the merits. While Petitioner obviously disagrees with the outcome of the state court proceedings, he cannot deny that they occurred, nor can he deny that they gave him a full and fair opportunity to litigate his Fourth Amendment claims.

Petitioner argues, however, that even though he was able to raise his Fourth Amendment claims in the trial court and on direct appeal, he still is entitled to have those claims reviewed -- for a third time -- in a federal habeas proceeding. He contends that he is entitled to federal habeas review because he was "foreclosed from using [the state] procedure[s] because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994), cert. denied, 514 U.S. 1052 (1995). Petitioner argues

that "the system" failed him in this case, because his attorney did not seek further review in the Minnesota Supreme Court after the Minnesota Court of Appeals upheld his conviction. This argument must be rejected. It is true that the Eighth Circuit Court of Appeals has adopted the "unconscionable breakdown in the system" exception to the Stone v. Powell rule, (Willett, supra), but that exception is not available here.

In Minnesota, the rules of "the system" -- i.e., the State's procedural rules -- do not entitle most criminal defendants to have their claims reviewed in the State Supreme Court. Minnesota does guarantee Supreme Court review of first degree murder convictions, (see Minn.Stat. § 632.14), but that is a rare exception to the general rule. Normally, the only right of appeal lies in the State Court of Appeals. In most criminal cases, including Petitioner's, Supreme Court review is purely discretionary. See Minn. R. App. P. 117, subd. 2 ("[r]eview of any decision of the Court of Appeals is discretionary with the Supreme Court"). Therefore, even if Petitioner (or his attorney) had filed a timely petition for further review in the Minnesota Supreme Court, it cannot be assumed that the Supreme Court would have actually reviewed Petitioner's claims on the merits. Because Petitioner had no statutory or constitutional right to have his Fourth Amendment claims reviewed on the merits in the State Supreme Court,[2] the absence of such review in this case cannot be seen as the type of "unconscionable breakdown in the system" that would cause Stone v. Powell to be inapplicable.

---

[2] See Ross v. Moffitt, 417 U.S. 600, 611 (1974) ("while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all").

Furthermore, the state trial court specifically determined that it was Petitioner – not his attorney – who was responsible for the failure to seek further review in the Minnesota Supreme Court.[3] Thus, the absence of any Supreme Court review of Petitioner's Fourth Amendment claims cannot be attributed to the State or any "unconscionable breakdown in the system." The record shows that it was Petitioner himself who was ultimately responsible for that circumstance.

In sum, the Court is satisfied that Petitioner was not deprived of a full and fair opportunity to litigate his Fourth Amendment claims due to an "unconscionable breakdown in the system." The resolution of Petitioner's Fourth Amendment claims -- i.e., his first, second, third and fifth grounds for relief -- is therefore simple and straightforward. Because Petitioner received a full and fair opportunity to present those claims in the Minnesota state courts, Stone v. Powell precludes the federal district court from entertaining those claims in a habeas corpus proceeding.

B. Ground Five (the "Miranda Claim") Is Without Merit

In his fifth ground for relief, Petitioner claims that his tape-recorded statements on November 12, 1995, (the day after his car was stopped), were improperly obtained, and should not have been useable by the State for any purpose. He contends that those statements should have been suppressed because (a) he had not been fully re-advised of all of his Miranda rights immediately before making those statements, and (b) the

---

[3] The trial court's "Findings of Fact" in the state post-conviction proceeding expressly indicate that Petitioner's attorney "was not retained to perform that service [i.e., applying for review in the Supreme Court] because Petitioner failed to fulfill necessary conditions prior to representation that were conveyed to him by counsel." (Respondent's Memorandum, Appendix C, p. 2.) This factual determination is entitled to a presumption of correctness, (28 U.S.C. § 2254(e)(1)), which Petitioner has not rebutted.

statements were obtained by deceit, because he did not realize they were being recorded. This claim must be rejected because Petitioner has not shown that it was wrongly adjudicated in the state courts.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas claims brought by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405 (emphasis added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct;" and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

When Petitioner's present Miranda claim is considered with these principles in mind, it is readily apparent that he is not entitled to federal habeas corpus relief. Petitioner has

made no effort to show that the Minnesota state courts decided his Miranda claim in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Indeed, Petitioner has not cited even one U.S. Supreme Court decision in support of his Miranda claim. Nor has he explained how the state courts might have made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Moreover, the Court finds that the resolution of Petitioner's Miranda claim in the state courts was indeed consistent with U.S. Supreme Court precedents, and was supported by the evidence of record. The Minnesota Court of Appeals correctly recognized that the critical issue was not whether Petitioner had been read some specific statement of his rights at some specific time before making his inculpatory statement, or whether he knew his statement was being recorded; instead, the issue was whether, given the totality of the circumstances, Petitioner made his statement voluntarily -- i.e., with knowledge of his rights. Wilson, 1998 WL 188554 at *4. This ruling by the state court is fully consistent with relevant U.S. Supreme Court decisions. See e.g., North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("[t]he question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case"). See also United States v. Cajas-Maldonado, No. 00-403 (8th Cir. 2001), 2001 WL 737655 (unpublished opinion) (defendant's statement need not be suppressed even though full Miranda warning was not given immediately before the statement was made, where the circumstances indicated that defendant was aware of his Miranda rights and made his statement voluntarily).

In assessing the voluntariness of Petitioner's statement to the police, the State Court of Appeals noted that he had been given a full Miranda warning the night before he made his statement, and that his "age, education, and experience within the criminal justice system support the voluntariness of his statement." The state appellate court therefore concluded that the trial court "did not err in determining [Petitioner] made a knowing and intelligent waiver of his Miranda rights." Wilson, 1998 WL 188554 at *4. Petitioner has not identified any flaw in the Court of Appeals' premises, reasoning, or conclusion that would satisfy the § 2254(d) standard for obtaining habeas corpus relief. His fifth claim for relief must therefore be rejected.

C. Ground Six (the "Insufficiency of the Evidence Claim") Is Without Merit

In his sixth claim for relief, Petitioner contends that there was insufficient evidence to support his conviction resulting from the cocaine found in his residence. He argues that

> "The mere presence of the narcotics at petitioner's residence as found by the [trial] court, without additional admissible facts which indicate petitioner's possession, is insufficient to support a guilty verdict. Based upon the record before the court, there was no evidence from which the court could find that petitioner possessed the narcotics."

(Petition, [Docket No. 1], p. 5-E.)

The standard of review for this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). Under this standard, the Court does not re-weigh the evidence to see whether it agrees with the fact-finder's assessment of it; nor does the Court consider whether the evidence could have resulted in acquittal. Rather, the issue is whether any rational trier of fact could have found the defendant guilty based on

the evidence presented at trial. If conflicting inferences could be drawn from the evidence, then the Court must assume that the trier of fact resolved those conflicts in favor of the prosecution, and the Court must "defer to that resolution." Id. at 326.

As explained by our Court of Appeals:

> "This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence... [T] he government must be given the benefit of all inferences that may logically be drawn from the evidence. It is not necessary that the evidence exclude every reasonable hypothesis except guilt; instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty. This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses. Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence. And finally, this court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly."

Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996).

In the present case, the State Court of Appeals explained its ruling on Petitioner's sufficiency of the evidence claim as follows:

> "To prove knowing possession of the cocaine, the state was required to show that (1) the defendant consciously possessed the drug, either physically or constructively; and (2) the defendant had actual knowledge of the nature of the substance. [Citation omitted.] Because the officers discovered the cocaine in a common area of Wilson's home, the state had to establish a strong probability (inferable from other evidence) that Wilson consciously exercised dominion and control over the drug up to the time of the arrest....
>
> The following evidence was sufficient to prove constructive possession: (1) Officer Lyttle saw Wilson leave the premises while the other officers prepared to execute the warrant; (2) Wilson was the only person on the premises at the time, which gives rise to an inference that he had been exercising dominion and control over the cocaine; and (3) Wilson told Officer Lyttle the exact location of the cocaine, which was hidden inside a child's toy. While Wilson's statement about the toy was not admissible as direct evidence because he had not received a Miranda warning, it is admissible to impeach

Wilson's claim that he did not know there were any drugs on the premises." Wilson, 1998 WL 188554 at *6.

Once again, Petitioner has failed to explain how the state court's decision could be viewed as being "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or how that court might have made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Therefore, Petitioner's insufficiency of the evidence claim must also be denied on the merits.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: February 12, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by March 4, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.